UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
AT CINCINNATI

| | |
|---|---|
| WILLIAM P. COX<br>1214 Hayward Avenue<br>Cincinnati, Ohio 45208<br><br>PLAINTIFF,<br><br>v.<br><br>TRANSIT GROUP<br>TRANSPORTATION, LLC<br>7680 Universal Blvd, Suite 650<br>Orlando, Florida 32819-8900<br><br>Serve: C T Corporation System<br>1200 South Pine Island Rd.<br>Plantation, FL 33324<br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Civil Action No. _____<br><br>C-1-03- 67<br> |

## COMPLAINT

Plaintiff, William P. Cox ("Cox"), for his Complaint against Transit Group Transportation, LLC ("Transit Group"), states:

### PARTIES

1. Cox, at all times relevant, was a citizen and resident of Cincinnati, Ohio and was employed as Chief Financial Officer for Transit Group.

2. Transit Group, at all times relevant, is and was a Florida Corporation with its principal offices located in Orlando, Florida. Transit Group, by virtue of the nature and extent of business in Orlando, Florida, at all times relevant, is and was, a citizen and resident of the State of Florida.

## JURISDICTION AND VENUE

3. Diversity of citizenship as required by 28 U.S.C. § 1332 is met, as this Action is between citizens of different states.

4. The undersigned states that the amount in controversy in Plaintiff's Complaint exceeds the amount of $75,000, exclusive of interest and costs.

5. The Defendant has caused and will cause injury to Plaintiff in Cincinnati, Ohio, and venue, therefore, lies in the United States District Court for the Southern District of Ohio at Cincinnati, pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

6. On or about the month of July, 2002, Transit Group, through its agent and head-hunter, Tim O'Brien, contacted Plaintiff in Cincinnati, Ohio, regarding interviewing for the position of Chief Financial Officer ("CFO") for Transit Group.

7. At this time, Transit Group was engaged in Chapter 11 bankruptcy reorganization and protection.

8. On July 31, 2002, and again on August 13, 2002, Transit Group interviewed for the CFO position with Jim Salmon ("Salmon"), Transit Group's Chief Executive Officer.

9. Approximately, ten days following the second interview, Plaintiff received notice from Tim O'Brien that the CFO offer from Transit Group would be forthcoming.

10. On or about September 11, 2002, Plaintiff and Salmon discussed the CFO position and Plaintiff's concerns with the arrangements at that time, including the following:

    a. the fact that the school year had begun and Plaintiff's potential loss on the contracts with his children's schools;

      b.      the fact that the management and equity positions with Transit Group were not yet finalized; and

      c.      what would happen to the CFO position if the business were sold or merged into a larger organization.

11.    Between September 16 - 20, 2003, Plaintiff and Salmon continued discussions regarding the provisions of the CFO position, including the issues surrounding the equity plan, equity pay-out information, the relocation assistance plan, and the manner in which a change-of-control of Transit Group would be handled.

12.    On September 22, 2002, Salmon on behalf of Transit Group extended a final version of the employment agreement as negotiated between he and the Plaintiff. This agreement is attached hereto and incorporated by reference as Exhibit 1. The agreement, as signed by Salmon, provided for the following:

      a.      <u>Base salary</u>:   You will receive a base salary of $200,000 per year, commencing with the start of your employment. You will be reviewed annually, at your anniversary date.

      b.      <u>Annual Bonus</u>: In addition to your base salary, you will also receive a bonus, which will be calculated based upon your EBITDA performance (growth and profitability goals), together with your overall contributions to the business.

      c.      <u>Equity Participation</u>: Because you will join Transit group in a critical role, and in recognition of your desire to participate in an equity program, I am in the process of developing a plan which will be described to you in detail once it is completed.

      d.      <u>Temporary Housing</u>: So that you do not disrupt your children's education, we understand your desire to commute from Cincinnati to Orlando for a period of up

to 12 months. During this period, Transit Group will provide you with adequate temporary housing in the Orlando area. We will cover the cost of the housing, together with reasonable transportation to and from you principal residence in Cincinnati.

    e. <u>Medical Benefits</u>: Our medical policy is United HealthCare, a preferred provider network. The cost of the coverage for you and your family will be covered by the company. The deductible for family coverage is $500. Our dental plan offers family coverage for $12.23 per week.

    f. <u>Life Insurance</u>: You will be provided group term life insurance policy for $50,000 face amount.

    g. <u>Short- and Long-term Disability</u>: Short- and long-term disability are 50 percent paid company benefits.

    h. <u>Change of Control</u>: In the event of a (i) the Company terminates your employment for any reason other than cause or (ii) subsequent to a change of control of the Company you terminate your employment for any reason within three months after the change of control of the Company, we will continue to pay your base salary, bonus and benefits at the effective date of termination for twelve months from the effective date of termination as long as you do not compete with the Company or disclose or use non-public information concerning the Company.

  13. On or about September 24, 2002, Plaintiff signed the employment agreement. Exhibit 1.

  14. Also on or about December 11, 2002, the Transit emerged from bankruptcy pursuant to a confirmed plan of reorganization. Pursuant to that plan, all of the existing shares were cancelled and new preferred shares were issued to G. E. Capital, who became the

controlling shareholder, and new common shares were issued to Salmon. This constituted a "Change of Control" under the terms of the employment agreement. No other shares were issued at this time.

15. On or about the end of December, 2002, Plaintiff received notice of his eligibility for enrollment in the Transit Group's group health plan as of January 1, 2003. See Exhibit 2. Plaintiff completed his enrollment application on January 1, 2003, electing health coverage for himself and his family through Transit Group's group health plan. See Exhibit 3.

16. On or about January 5, 2003, the Board issued Preferred Series C shares to Salmon. No other shares were issue at this time.

17. On or about February 3, 2003, Plaintiff and Salmon met to discuss the failure to issue Plaintiff the equity participation as provided under the terms of the employment agreement. At this time, Salmon indicated that Plaintiff's employment with Transit Group would be terminated, with which Plaintiff agreed. Plaintiff's termination occurred within the three month period following the change-of-control proscribed within the employment agreement; however Salmon specifically requested the Plaintiff keep the fact of his termination confidential and that Plaintiff continue in his position for a little while longer for purposes of maintaining smooth operations during the transitional period.

18. Upon information and belief, Salmon contacted Tim O'Brien on the evening of February 3, 2003, to inform him of Plaintiff's termination. Tim O'Brien contacted Plaintiff on February 5, 2003, for purposes of confirming his conversation regarding Plaintiff's termination with Salmon.

19. Upon information and belief, on March 5, 2003, Salmon met with Transit Group's General Counsel, Sharon McBrayer, regarding the termination of Plaintiff's employment and

also for purposes of drafting a formal resolution for the resignation of Plaintiff's position as Trustee for the company's 401k Plan. Salmon specifically instructed McBrayer to use "March 7, 2003" as the official date of resignation in drafting the resolution.

20. On or about March 7, 2003, Plaintiff and McBrayer conferred via telephone regarding the resolution. McBrayer also explained to Plaintiff that Salmon had specifically instructed her to use "March 7, 2003" as the date of the resignation.

21. On or about the morning of March 10, 2003, Salmon met with the corporate office staff and informed them that Plaintiff had been terminated.

22. On March 26, 2003, Plaintiff and Salmon discussed Plaintiff's departure, at which time it was agreed that it was in the best interest of Transit Group for Plaintiff to remain with the company until April 11, 2003, for purposes of assisting with the March fiscal reports.

23. Plaintiff's final day in Orlando was April 11, 2003; however, Plaintiff continued to conduct business on behalf of Transit Group through April 29, 2003.

24. Transit Group's payment of Plaintiff's compensation ceased on April 23, 2003.

25. On or about May 20, 2003 and June 2, 2003, Plaintiff emailed Salmon to advise him of Transit's Group's failure to comply with the employment agreement in accordance with the change-of-control provision and Transit Group's obligation to continue payment of Plaintiff's base salary and benefits for twelve months.

26. Notwithstanding Plaintiff's emails, Salmon explicitly refused to continue Plaintiff's salary, in direct contradiction to the employment agreement.

27. Additionally, Transit Group further failed to provide Plaintiff with a COBRA notification for purposes of continuing Plaintiff's health insurance benefits for him and his family.

## COUNT I
## Breach of Contract

28. Plaintiff adopts and re-alleges each prior paragraph of this Complaint.

29. Transit Group breached the employment agreement by failing to pay the benefits outlined in his employment agreement even though Defendant (a) terminated him without cause and (b) terminated within three months of a change-of-control of the company. As a result, Plaintiff is entitled to damages in the amount equal to the benefits he is entitled to under the employment agreement for being terminated without Cause. See Exhibit 1.

## COUNT II
## Statutory Damages

30. Plaintiff adopts and re-alleges each prior paragraph of this Complaint.

31. Transit Group's repudiation of the employment agreement and its failure to pay the amounts due there under, constitute violations of ORC § 4113.15, entitling him to liquidated damages provided by statute.

## COUNT III
## Failure to Provide COBRA Notice
## (29 U.S.C. § 1166 and § 1132)

32. Plaintiff adopts and re-alleges each prior paragraph of this Complaint.

33. The termination of Plaintiff's employment constituted a "qualifying event" pursuant to 29 U.S.C.§ 1163. Plaintiff's failure to provide notice to Plaintiff of his right to continuation of benefit coverage constitutes a continuing violation of 29 U.S.C. § 1166.

34. Transit Group's violation of 29 U.S.C. § 1166 entitles Plaintiff to the statutory damages provided by 29 U.S.C. § 1132(c).

## COUNT IV
## Attorneys Fees
## (29 U.S.C. § 1132)

35. Plaintiff adopts and re-alleges each prior paragraph of this Complaint.

36. Transit Group's violation of 29 U.S.C. § 1166 entitles Plaintiff to statutory attorneys fees provided by 29 U.S.C. § 1132(g).

**WHEREFORE**, Plaintiff demands as follows:

A. That Plaintiff recover statutory liquidated damages pursuant to ORC § 4113.15 and 29 U.S.C. § 1132(c);

B. That Plaintiff recover his reasonable attorneys fees incurred pursuant to 29 U.S.C. § 1132(g); and

C. For all relief to which Plaintiff may appear entitled, including recovery of his costs.

Respectfully submitted,

Dated: 10/1, 2003

_____
Michael G. Schwartz
SCHWARTZ, MANES & RUBY
441 Vine Street
2900 Carew Tower
Cincinnati, Ohio  45202-3090
(513) 579-1414

Dennis D. Murrell
Amy E. Shoemaker
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville, Kentucky 40202
(502) 584-1135

COUNSEL FOR PLAINTIFF
WILLIAM P. COX